IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARYLEE ARRIGO,

                            OPINION and ORDER

              Plaintiff,

                            12-cv-700-bbc

      v.

LINK STOP, INC., JAY E. LINK,
ASHLAND LAKE SUPERIOR LODGE, LLC,
GRANDMA LINK'S RESTAURANT AND LOUNGE, LLC
and GORDON PINES GOLF COURSE,
d/b/a LINK INTERNATIONAL INVESTMENTS, LLC,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case under the Family and Medical Leave Act is scheduled for trial on May 5, 2014. Plaintiff contends that defendants violated the FMLA by interfering with her ability to take leave in various ways before finally terminating her. This order addresses the motions in limine filed by both sides as well as defendants' motions to use a juror questionnaire and to amend their pretrial disclosures.

1

OPINION

A. <u>Motions In Limine</u>

1. <u>Plaintiff's motions in limine</u>

a. Plaintiff's motion to sequester witnesses, dkt. #156

Defendants do not object to this motion except to say that they are *each* entitled to keep a corporative representative present throughout the trial. Although defendants are correct that the court's general practice is to allow each corporate defendant to keep one representative in the courtroom, there seems to be little reason to follow that practice in this case. The parties agree that all of the corporate defendants are owned by defendant Jay Link and may be sued collectively in this case as a "joint employer" under the FMLA, so it makes sense to treat them as one entity under the sequestration rule. Accordingly, my tentative conclusion is that all of the corporate defendants will be entitled to keep one representative among them throughout the trial. If defendants believe that they are entitled to more, they should be prepared to cite relevant legal authority at the final pretrial conference.

b. Plaintiff's motion to exclude email exchange between Brian Cook and Lydia Cook, dkt. #157

Defendants wish to present evidence of an email that Lydia Cook (defendant Jay Link's assistant) received from her husband in which he purportedly cut and pasted a posting from plaintiff's Facebook web page in which she complained about her coworkers in an unprofessional manner while working for defendants. Defendants want to use the evidence

2

to support their position that one of the reasons they terminated plaintiff was her poor attitude.

As plaintiff points out, one of the problems with this evidence is that defendants do not suggest that the decision maker in this case, defendant Jay Link, was aware of the email or that either Brian Cook or Lydia Cook told Link about any negative comments they believed were on plaintiff's Facebook page.  The question for trial is what *Link* believed about plaintiff's performance, so if he was not aware of the email, it would not be relevant to showing defendants' intent.   Balderston v. Fairbanks Morse Engine Division of Coltec Industries, 328 F.3d 309, 323 (7th Cir. 2003); Walker v. Board of Regents of University of Wisconsin System, 300 F. Supp. 2d 836, 854 (W.D. Wis. 2004).

Defendants' only response to this is to say that Cook had complained *generally* to Link about plaintiff mistreating employees and that the email "corroborates"  Cook's view and shows that she honestly believed that plaintiff had performance problems.  However, what *Cook* believed about plaintiff's performance is irrelevant to this case except to the extent that she communicated her concerns to Link because defendants do not suggest that Cook was a decision maker.  Thus, both Cook and Link are free to testify about anything Cook told Link about her opinions of plaintiff, but she cannot testify about information that she did not disclose to Link because that information could not have influenced his decision.


c.  Plaintiff's motion to exclude evidence of her bartending at Gruzy's, dkt. #159

d.  Plaintiff's motion to exclude evidence of Kelly Cashman's criminal history, dkt. #160

e.  Plaintiff's motion to exclude evidence of plaintiff's alleged infidelity, dkt. #161

f.  Plaintiff's motion to exclude evidence of plaintiff's marijuana use, dkt. #162

   I am granting these motions as unopposed.


g.  Plaintiff's motion to exclude evidence of unemployment benefits, dkt. #163

   After defendants terminated plaintiff, she received unemployment benefits for a time. Defendants say that those benefits should be deducted from any back pay award plaintiff receives.  Regardless whether I agree with defendants on that issue, their argument is premature.  In the cases cited by the parties, it was the court and not the jury that determined whether and to what extent unemployment benefits should be deducted. Flowers v. Komatsu Mining Systems, Inc., 165 F.3d 554, 558 (7th Cir. 1999); Perry v. Larson, 794 F.2d 279, 285-86 (7th Cir. 1986);  Orzel v. City of Wauwatosa Fire Dept., 697 F.2d 743, 756 (7th Cir. 1983).  In one case, the court stated expressly that "even if [the defendant] is correct that there is a basis in this case for the court to reduce a potential damages award by unemployment compensation received, [defendant] has not shown why such evidence must be presented to the jury and why the issues cannot be dealt with in a post-trial motion."  Benders v. Bellows & Bellows, P.C., 04 C 7326, 2009 WL 1177066 (N.D. Ill. Apr. 29, 2009).

   The same is true in this case, so I am granting plaintiff's motion to exclude this evidence during the trial.  If plaintiff obtains a back pay award, defendants are free to raise this issue again in a post-trial motion.

4

h.  Plaintiff's motion to exclude evidence of alleged bookkeeping errors discovered after her termination, dkt. #164

Defendants wish to use evidence of alleged bookkeeping errors by plaintiff that her successor discovered after plaintiff was terminated to show that, even if plaintiff was fired for taking leave, defendants would have fired her later anyway.  (Plaintiff does not dispute that defendants can introduce evidence of pretermination bookkeeping errors.)   In McKennon v. Nashville Banner Publication Co., 513 U.S. 352, 362-63 (1995), the Supreme Court held that "after-acquired evidence" such as this may not be used to avoid liability, but it may be used to limit the plaintiff's damages if the defendant can show that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."

Plaintiff seeks to exclude this evidence on two grounds:  (1) defendants waived the defense by failing to include it in their answer; and (2) "[a]ny presentation of this evidence will only serve to waste time and confuse the jury," so it should be excluded  under Fed. R. Evid. 403.  Dkt. #164 at 3.  Plaintiff's first argument fails because "a delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result," Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 632 (7th Cir. 2010), and plaintiff does not even attempt to show that she was prejudiced by defendants' failure to plead this defense. As defendants point out, the fact that plaintiff filed this motion is evidence that she knew that defendants were planning on raising this issue at trial.  In addition, defendants cite deposition testimony from this case of both plaintiff and her successor in which this issue

was discussed at length.  Dkt. #52 at 39-72; dkt. #39 at 339-77.

Plaintiff's second argument is less straightforward, but it seems to have two parts, first, that it may be too difficult for the jury to assess whether plaintiff made accounting errors and, second, that the jury may be misled into believing that any accounting errors she made are relevant to the question whether defendant should have given her medical leave. Neither argument is persuasive.

Plaintiff cites no authority for the view that a party may be prevented from asserting an entire defense because it involves concepts outside the experience of some of the jurors. That is the reason that the parties call witnesses to explain those concepts and request jury instructions that will minimize the risk of confusion.  Plaintiff's counsel is free to cross examine defendants' witnesses about this issue to the extent counsel believes that the witnesses are misleading the jury and, of course, plaintiff is free to testify on her own behalf to defend her performance.  In addition, to the extent that an after-acquired evidence defense could confuse the jury on issues related to liability, the easy solution to this is a bifurcated trial.

i.  Plaintiff's motion to exclude evidence of alleged comments she made after her termination, dkt. #165

According to defendants, plaintiff said, "Fuck you, Jay Link" in the moments after he told her that she was terminated.  Plaintiff says that the alleged comment is irrelevant because it occurred after Link made his decision, so it could not have influenced him.

6

Although I agree with plaintiff that the alleged comment is not relevant to show the reason she was fired, it is relevant for another purpose, which is to impeach plaintiff's characterization of the meeting with Link.  In particular, plaintiff has testified that she asked Link to explain his reasons for terminating her at the time, but he was unable to do so, which she says is evidence that the reasons he cites now are pretextual.  Defendant Link says that he did not have an opportunity to explain his decision because plaintiff said, "Fuck you" and walked out the door.  Particularly if plaintiff is going to rely on defendant Link's silence to support her claim, he must be permitted to give his side of the story.

j.  Plaintiff's request for clarification regarding employee eligibility, dkt. #166

Most of plaintiff's motion for partial summary judgment was devoted to the issue whether defendants met the 50-employee minimum for lawsuits under the FMLA.  Dkt. #63.   However, at the end of her brief, plaintiff included a section called "Plaintiff is an Eligible Employee under the FMLA" in which she wrote that "Defendants also deny that Plaintiff was an 'eligible employee' under the FMLA at the time she requested leave.  Because their denial rests solely on the 50-employee requirement, (Ex. 5.), summary judgment is warranted on this issue as well."  Id. at 42.  Exhibit 5 refers to a response to an interrogatory in which defendants stated that plaintiff is not an eligible employee under the FMLA because defendant Link Stop, Inc. is her only employer and Link Stop did not employ more than 50 people.  Dkt. #66-5 at 4.

Defendants' discovery response is somewhat surprising because the question whether

an employee is "eligible" for FMLA protection has nothing to do with the number of employees. Rather, an employee is "eligible" to bring an FMLA lawsuit if she worked at least 1250 hours during the previous 12-month period. 29 U.S.C. § 2611(2)(A). However, defendants did not change or clarify their position in their response to plaintiff's motion for partial summary judgment. Instead, they simply ignored it. Unfortunately, I overlooked the issue as well. Although I granted plaintiff's motion for partial summary judgment as it related to the question whether defendants met the 50-employee minimum, I did not include any language in the order about the "eligible employee" issue. As a result, plaintiff asks the court to clarify the status of this issue.

In their response to plaintiff's motion in limine, defendants do not deny that they failed to address the "eligible employee" issue at summary judgment and they also do not deny that the only objection they raised in their interrogatory response was that plaintiff was not an "eligible employee" because defendant Link Stop did not employ 50 people. However, they argue that they did not waive the issue because defendant Jay Link made a statement during his deposition that he "doubt[ed]" that plaintiff worked more than 40 hours a week in 2010, and because they included allegations in their summary judgment materials that plaintiff worked an "irregular schedule" the year before she was fired, often coming in late and leaving early. Defendants say that their "incomplete" interrogatory response is not dispositive because plaintiff had notice through these other sources that defendants were challenging whether she worked enough hours to qualify for protection under the FMLA.

Defendants' argument is disingenuous to say the least.  In their summary judgment materials, defendants discussed plaintiff's allegedly irregular work schedule in the context of arguing that plaintiff was a bad employee; they never tied those allegations to the question whether plaintiff was an eligible employee.  Further, it is unreasonable to argue that an isolated deposition answer could give a party notice of a particular defense.  In any event, plaintiff did not need to work 40 hours a week to qualify under the FMLA (1250 hours in a year averages out to fewer than 25 hours a week), so defendant Link's statement could not have given plaintiff notice that defendants objected to her eligibility.  Even if it could, I agree with plaintiff that defendants forfeited the issue by failing to respond to plaintiff's argument in her motion for partial summary judgment.  Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").  That was the time for defendants to raise any objections that they might have.  Accordingly, I am amending the October 4, 2013 order, dkt. #127, to grant plaintiff's motion for partial summary judgment with respect to the question whether plaintiff is an "eligible employee" under the FMLA.

2. Defendants' motions in limine

a.  Defendants' motion to exclude evidence related to any claim other than her termination claim, dkt. #170

In the October 4, 2013 order, dkt. #127, I denied defendants' motion for summary judgment with respect to plaintiff's claims that defendants:  (1) refused to allow her to come

back to work for two weeks after her doctor released her to work; (2) changed her working conditions after she returned; (3) refused a request for medical leave in November 2010; and (4) terminated her because of the exercise of her rights under the FMLA. However, defendants argue that plaintiff cannot prevail on her first three claims because she did not suffer any damages that may be awarded under the FMLA. (Defendants also say that plaintiff is not entitled to equitable relief with respect to those claims and plaintiff does not respond to that argument, so I need not consider it.)  In particular, plaintiff's damages are limited to her "actual monetary losses," such as lost wages.  29 U.S.C. § 2617(a)(1)(A). Defendants cite Franzen v. Ellis Corp., 543 F.3d 420, 430 (7th Cir. 2008), in which the court of appeals affirmed the district court's decision to enter judgment in favor of the defendant on an FMLA claim after the plaintiff was unable to prove damages under § 2617.

Defendants do not explain why they failed to raise this issue in their summary judgment motion, but plaintiff does not deny that she suffered no monetary losses with respect to her first three claims.  Although plaintiff says that the first three alleged FMLA violations contributed to her termination, that is not an argument that the first three alleged violations may be sustained as independent claims.  Rather, it is an argument that she should be permitted to present evidence related to the first three alleged violations to help prove her termination claim.  Accordingly, I will dismiss the complaint as to all of plaintiff's claims except for her termination claim.  However, plaintiff is free to present evidence of the dismissed claims to the extent it is relevant to prove her termination claim.

b.  Defendants' motion to exclude evidence of the claims dismissed on summary judgment, dkt. #171

In the October 4, 2013 order, I granted defendants' motion for summary judgment on plaintiff's claims that defendants violated her rights by moving her office, excluding her from management decisions and keeping a "closer eye" on her because plaintiff had failed to show that these actions were materially adverse. Defendants rely solely on the dismissal to argue that evidence related to the dismissed claims should be excluded, but, as discussed above, a conclusion that evidence cannot sustain an independent claim is not the same as a conclusion that the evidence is irrelevant.  Again, plaintiff is free to rely on evidence related to her dismissed claims if that evidence is also relevant to prove her termination claim.

c.  Defendants' motion to exclude evidence and argument "relating to" plaintiff's barred claims under Title VII and the Americans with Disabilities Act, dkt. #172

Shortly before the deadline for filing dispositive motions, plaintiff filed a motion for leave to amend her complaint to add claims for violations of Title VII and the ADA, but I denied the motion as untimely. Dkt. #79.  I agree with defendants that plaintiff may not argue that defendants violated the ADA or Title VII or refer to the dismissed claims, but to the extent evidence "relating to" the ADA and Title VII claims overlaps with evidence relating to plaintiff's FMLA claim, plaintiff remains free to present that evidence.  For example, plaintiff alleges that defendants fired her in part because they did not want to give her leave for her pregnancy.  Although plaintiff may not argue that defendants engaged in

11

pregnancy discrimination, she is not prohibited from mentioning the reason she requested leave.

d. Defendants' motion to exclude evidence and argument regarding plaintiff's claim against defendant Jay Link, dkt. #173

At summary judgment, the parties stipulated that all of defendants (with the exception of Jay Link) qualified as a "joint employer" so that their number of employees could be combined in determining whether the 50-employee threshold is satisfied. Dkt. #85. Because defendant Link was omitted from the stipulation, I directed plaintiff to explain her grounds for including Link as a defendant. Dkt. #127 at 14. In response, plaintiff cited 29 U.S.C. § 2611(4)(A)(ii)(I), which states that an individual may be sued under the FMLA if he "acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Because Jay Link made all the decisions at issue in this case, plaintiff argued that Link could be sued under § 2611(4)(A)(ii). As a result, I allowed Link to stay in the case.

In their motion in limine, defendants argue that, when Link fired plaintiff, he was acting on behalf of Link Stop only. Further, because Link Stop does not employ 50 people, defendants say that Link was not acting in the interest of an "employer" within the meaning of the FMLA. Defendants cite little evidence to support this undeveloped argument, which seems inconsistent with their stipulation that plaintiff may sue the other defendants jointly. As plaintiff points out, defendant Link owned all of the businesses, which supports a view that he was acting on behalf of all of the businesses. In any event, defendants have not

shown in their motion in limine that defendant Link should be dismissed.

e.  Defendants' motion to exclude evidence and argument relating to defendant Link's divorce, IRS proceedings, family disputes, litigation history, wealth or other businesses, dkt. #174

Plaintiff does not oppose this motion with respect to defendant Link's divorce or family disputes, so I will grant the motion with respect to those two issues.  With respect to IRS proceedings, plaintiff says that she should be permitted to introduce evidence that Link told her not to introduce herself as the bookkeeper to an auditor and evidence about communications with Jason Uetrecht, who "had some involvement in some of Defendants' IRS proceedings."  Defendants' motion does not seem to encompass the first issue, which relates to a conversation between plaintiff and defendant Link, not the IRS.  With respect to Uetrecht, plaintiff does not identify any particular communications she wants to introduce, so it is impossible to determine whether it might be relevant to this case.

With respect to litigation history, plaintiff says that she may wish to use statements from prior cases for impeachment purposes, which is permissible.

With respect to wealth, plaintiff says she wants to prove that defendant Link was acting on behalf of all defendants for the purpose 29 U.S.C. § 2611(4)(A)(ii) with evidence that Link "frequently exchanged cash between his personal bank account and the other Defendants' bank accounts."  Dkt. #197 at 2.  Again, that issue seems to be beyond the scope of defendants' motion because it does not show how wealthy Link is.

13

With respect to Links's "other businesses," plaintiff wishes to present evidence on several topics:

(1) how often defendant Link was working at his other businesses, because it undermines his testimony that he was in a position to personally observe plaintiff's work performance;

(2) the fact that plaintiff and other witnesses had worked for defendant Link at his other businesses;

(3) the differences between defendants and Link's other business, to explain why it is not persuasive evidence that Link allowed employees at those other businesses to take leave without repercussions;

(4) the similarities between plaintiff and Lehmann, who worked for the other businesses, to show that Lehmann was a similarly situated employee who received more favorable treatment;

(5) Link's "knowledge as a business owner," dkt. #197 at 2.

Plaintiff does not explain how (2) or (5) could be relevant to this case, so I do not consider those issues. However, plaintiff has provided a minimally adequate explanation of the relevance of the other topics, so I will deny defendants' motion with respect to those.


f.  Defendants' motion to exclude evidence related to Marilyn Lehmann, dkt. #175

Plaintiff wishes to help prove her claim with evidence that Lehmann had performance issues similar to those defendants allege that plaintiff had, but defendants treated Lehmann

more favorably because she did not ask for medical leave.  Defendants want to exclude this evidence on the ground that Lehmann is not similarly situated to plaintiff, but I agree with plaintiff that this is a question of fact for the jury.  Defendants are free to present evidence about differences between plaintiff and Lehmann and to argue to the jury that the differences outweigh any similarities.

g.  Defendants' motion to bar "golden rule" arguments, dkt. #176

Defendants ask the court to prohibit plaintiff's counsel from asking the jury to "put themselves in plaintiff's position."  Dkt. #181 at 12.  This motion will be granted as unopposed.

h.  Defendants' motion to exclude plaintiff's calendar, dkt. #177

Defendants argue that the calendar plaintiff used to track her hours should be excluded as hearsay.  Plaintiff says that the calendar qualifies for multiple exceptions to the hearsay rule and that she should be allowed to use the calendar to (1) help prove that she is an "eligible employee" under the FMLA (an issue that is now moot in light of my conclusion that defendants forfeited that issue), (2) to rebut defendants' allegation that she worked inconsistent hours and (3) to help show that defendant Link was aware of her pregnancy .

Plaintiff argues that the calendar should qualify as a business record under Fed. R. Evid. 803(6) or as recorded recollection under Fed. R. Evid. 803(5).  Alternatively, she says

that it should be admitted under the residual exception in Fed. R. Evid. 807. The problem under Rule 803(6) is with respect to the requirement in 803(6)(E), which is that "neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness." Plaintiff wants to use her calendar to show that defendants are wrong to accuse her of failing to stick to her required schedule, but plaintiff would have had a strong incentive to record her hours as showing she was doing what she was supposed to do; she identifies no incentive she would have to report that she was coming in late or leaving early. Because Rule 807 also includes a similar requirement regarding trustworthiness, plaintiff cannot rely on the residual exception either.

Rule 803(5) is less restrictive. United States v. Ramsey, 785 F.2d 184, 192-93 (7th Cir. 1986) (record excluded under Rule 803(6) could be admitted under Rule 803(5)). That rule applies if the proponent testifies that she can no longer recall the matter addressed in the record, she made the record around the time of the relevant event and the record is accurate. Although plaintiff does not address the elements of Rule 803(5) in her brief, presumably she would testify to each of these things. However, under Rule 803(5), plaintiff is limited to reading the calendar into the record; it may not be received as an exhibit.

i. Defendants' motion to exclude evidence of plaintiff's damages during liability phase of trial, dkt. #178

The title of defendants' motion is misleading. Defendants are not asking simply for a bifurcated trial in which the jury decides liability and damages separately. Rather, they are

16

arguing that there are no damages issues for the jury to decide. In particular, defendants note that the parties agree that the court must decide the issues of front pay and liquidated damages. In addition, defendants argue that the court should decide the amount of back pay, which is the only remaining damages issue.

In support of their argument, defendants rely on Franzen v. Ellis Corp., 03 C 641, 2007 WL 2566237 (N.D. Ill. Aug. 30, 2007), in which the court concluded that back pay in an FMLA case is an issue for the court. However, the district court's conclusion relied on its belief that "the Seventh Circuit has held that the issues of front and back pay under the FMLA are equitable issues to be decided by the Court," but that is incorrect, as the Court of Appeals for the Seventh Circuit noted in the appeal of that case. The court of appeals included the following discussion in its opinion:

> [E]ach of the cases relied upon by the district court involved back pay under Title VII, not the FMLA, and none directly addressed the right to a jury trial under either statute. Furthermore, [plaintiff] submits, the only circuit to have addressed the issue squarely concluded otherwise and held that a plaintiff who requests back pay as a remedy does have a right to a jury trial under the FMLA. See Frizzell v. S.W. Motor Freight, 154 F.3d 641, 643-44 (6th Cir. 1998). In Frizzell, the Sixth Circuit considered the structure and the legislative history of the FMLA, particularly its close ties to the Fair Labor Standards Act ("FLSA"). Because courts have "uniformly interpreted" the remedial provisions of the FLSA to provide a right to a jury trial, see Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 347(1998), and both the structure and the legislative history of the FMLA suggest that Congress intended the remedial provisions of the FMLA to mirror those of the FLSA, the court inferred that Congress had intended to provide a right to a jury trial under the FMLA as well. Frizzell, 154 F.3d at 644. It also remarked that reliance on Title VII and ERISA case law for the proposition that back pay is an "equitable" remedy is inappropriate "[b]ecause the FMLA's link to the remedial provisions of the FLSA is stronger than it is to Title VII or ERISA." Id. Mr. Franzen submits that we should adopt the Sixth Circuit's holding that the FMLA provides a right to a jury trial for plaintiffs claiming back pay as a

17

remedy for violations of the statute.

Franzen v. Ellis Corp., 543 F.3d 420, 425 (7th Cir. 2008).  Although the court did not resolve the question because it decided the appeal on other grounds, I agree with plaintiff that the court's discussion leans more toward a conclusion that the issue of back pay should be decided by a jury rather than the court.  Because defendants cite no other authority under the FMLA for adopting their position, I am denying defendants' request to take this issue away from the jury.

Alternatively, defendants ask for a bifurcated trial, which is this court's usual practice anyway. Because plaintiff does not respond to this portion of defendants' motion and a bifurcated trial would address plaintiff's concerns related to defendants' "after acquired evidence" defense, I will grant defendants' alternative request.


j.  Defendants' motion to exclude evidence of emotional distress, dkt. #179

Defendants seek to exclude evidence of emotional distress because the FMLA does not allow a plaintiff to recover those damages.  I am granting this motion as unopposed.


k.  Defendants' motion to exclude evidence of "any job search efforts for which plaintiff discarded corroborating evidence," dkt. #180

In support of this motion, defendants cite testimony from one of plaintiffs' depositions in which she stated that she had not saved all of the documentation related to her job searches after defendants fired her.  Defendants interpret plaintiff's testimony to

mean that she had discarded potentially relevant evidence as recently as October 2012. They argue that plaintiff should have known by then that she needed to retain those documents because she was represented by counsel and had filed her administrative charge in 2011. They ask the court to prohibit plaintiff from referring to any efforts she made if she failed to retain documentation for those efforts. Alternatively, defendants ask for an instruction requiring the jury to draw an adverse inference from the missing documentation.

Defendants cite no authority in support of their request to limit plaintiff's testimony, so I decline to grant that request. Defendants' request for an adverse inference instruction has other problems. Generally, an adverse inference instruction tells the jury to infer that the missing documents would have supported the position of the opposing party. Bracey v. Grondin, 712 F.3d 1012, 1018-19 (7th Cir. 2013) (instruction is appropriate when plaintiff destroyed documents to "hid[e] adverse information"). However, as plaintiff points out, such an instruction would make no sense in this case because the missing documents allegedly are evidence of plaintiff's job search efforts, so it is difficult to see how those documents could have supported defendants' position. The inference defendants want the jury to draw is that the absence of the documents shows that plaintiff is lying about her job search efforts, but defendants do not develop an argument that such an instruction may be given for spoliation.

In any event, I am not persuaded that defendants have met this circuit's standard for spoliation, which requires proof that the party intentionally destroyed documents in bad faith. Norman-Nunnery v. Madison Area Technical College, 625 F.3d 422, 428-29 (7th Cir.

19

2010).  This is a heavy burden that the court of appeals rarely has found to be met.  E.g., Bracey, 712 F.3d at 1018-19 (affirming decision denying request for instruction); Everett v. Cook County, 655 F.3d 723, 726-27 (7th Cir. 2011) (same); Norman-Nunnery, 625 F.3d at 429-30 (same); Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644-45 (7th Cir. 2008) (same).

In asking the court to find that plaintiff acted in bad faith, defendants rely entirely on their belief that plaintiff discarded the documents after she filed her administrative charge, when she should have known that she was required to preserve the documents, but that argument has two problems.  First, the deposition testimony defendants cite does not indicate when plaintiff discarded the documents; rather, plaintiff said only that she did *not* discard any documents related to her job search efforts after she was instructed not to do so by defense counsel in October 2012.  Dkt. #111 at 10-11.  Second, the Court of Appeals for the Seventh Circuit has held that a court may not infer bad faith solely from a party's duty to preserve evidence.  Bracey, 712 F.3d at1019.  Because defendants have no evidence in support of their bad faith allegation, I am denying this motion.


### B.  Defendants' Request to Use a Juror Questionnaire

Defendants have asked to use a juror questionnaire instead of or in addition to the traditional voir dire conducted in open court.  Dkt. #182  Although defendants argue that a questionnaire is needed because of the "sensitive issues" in this case, I am not persuaded that the issues in this case require a departure from the court's ordinary procedure.

Plaintiff's claim is that defendant interfered with her medical leave related to her pregnancy and anxiety, both of which are matters experienced by millions of Americans.  Further, few of the questions in defendants' proposed questionnaire touch on issues that could be described fairly as "sensitive."   As in any other case, if a potential juror is uncomfortable with answering a particular question in open court, he or she is free to answer at a sidebar.

C.  Defendants' Motion for Leave to Amend Their Rule 26(a)(3) Disclosures

Defendants seek leave to amend their pretrial disclosures in two ways: (1) to add Deborah Fringer to their witness list; and (2) to add a damages chart to their exhibits list. Dkt. #214.  Defendants admit that their request is untimely, but they argue that the amendments should be permitted because plaintiff will not be unfairly prejudiced by them. Fed. R. Civ. P. 37(c)(1) (if party fails to provide information required under Rule 26(a), party may not rely on that evidence at trial, unless failure is harmless or substantially justified).

I am denying the motion as to defendants' witness list.  Defendants do not deny that they had not identified Fringer as a potential witness until now and they offer no justification for waiting.  Although defendants note that plaintiff had included Fringer as a potential witness in her initial disclosures, it is disingenuous for defendants to argue that Fringer's inclusion on that list shows that plaintiff will not be unfairly prejudiced by allowing Fringer to testify.  As defendants acknowledge in their motion, plaintiff identified Fringer

as someone who had information relating to "Plaintiff's job responsibilities and performance, and Defendants' practices." (In her opposition brief, plaintiff says that she named Fringer because she might have information about plaintiff's work at defendant Grandma Link's, but that issue is moot now that defendants have stipulated that they may be treated as a joint employer.) The proposed testimony defendants identify goes well beyond those issues to include alleged conduct by plaintiff after she was terminated.

Further, Fringer has not been deposed, which is sufficient by itself to show unfair prejudice. Defendants blame plaintiff for failing to depose Fringer, but it would not have made sense for plaintiff to do that. Once plaintiff determined that Fringer did not have information that could help plaintiff with her case, it would have been a waste of resources to depose a witness the other side had given no intention of calling. Accordingly, I conclude that allowing defendants to add Fringer as a witness is neither substantially justified nor harmless, so I am denying that aspect of the motion.

I am staying a decision about the damages chart. Defendants again focus on the question whether allowing the evidence is harmless, arguing that it is because the chart is nothing but a summary of their expert's testimony. Plaintiff's only response to this is to say that she has not "had an opportunity to question Dr. Wilner about the 'Damages Chart' or even review it in sufficient detail to determine whether it is consistent with his findings." Dkt. #216 at 4.

If in fact the chart is simply a summary of the expert's testimony and report, the chart would add nothing new, so there would be no need for plaintiff to question the expert again

before trial.  Although plaintiff says that she has not had an opportunity to determine whether there is anything new in the chart, it does not appear to be so complicated that it would be difficult for plaintiff to do that.  However, plaintiff may have an opportunity at the final pretrial conference to challenge the accuracy of the chart or to argue that it is too difficult or time consuming to assess the chart's accuracy before trial.

Plaintiff also objects to the chart on evidentiary grounds.  Because defendants have not had an opportunity to respond to those objections, they will have to be resolved at the final pretrial conference as well.

ORDER

IT IS ORDERED that

1.  Plaintiff Marylee Arrigo's motions in limine are decided as follows:

a. plaintiff's motion to sequester witnesses, dkt. #156, is GRANTED;

b. plaintiff's motion to exclude the email exchange between Brian Cook and Lydia Cook, dkt. #157, is GRANTED;

c. plaintiff's motion to exclude evidence of her bartending at Gruzy's, dkt. #159, is GRANTED  as unopposed;

d.  plaintiff's motion to exclude evidence of Kelly Cashman's criminal history, dkt. #160, is GRANTED as unopposed;

e.  plaintiff's motion to exclude evidence of plaintiff's alleged infidelity, dkt. #161, is GRANTED as unopposed;

23

f.  plaintiff's motion to exclude evidence of plaintiff's marijuana use, dkt. #162, is GRANTED as unopposed;

g.  plaintiff's motion to exclude evidence of unemployment benefits, dkt. #163, is GRANTED; if plaintiff receives an award of back pay, defendants may raise this issue in a post-trial motion;

h. plaintiff's motion to exclude evidence of alleged bookkeeping errors discovered after her termination, dkt. #164, is DENIED;

i.  plaintiff's motion to exclude evidence of alleged comments she made after her termination, dkt. #165, is DENIED;

j.  plaintiff's request for clarification regarding employee eligibility, dkt. #166, is GRANTED; the October 4, 2013 opinion and order, dkt. #127, is AMENDED to state that plaintiff's motion for partial summary judgment is GRANTED with respect to the question whether plaintiff is an "eligible employee" under the FMLA.

2.  The motions in limine filed by defendants Link Stop, Inc., Jay Link, Ashland Lake Superior Lodge, LLC, Grandma Link's Restaurant and Lounge, LLC, Gordon Pines Golf Course d/b/a Link International Investments, LLC are decided as follows:

a.  defendants' motion to exclude evidence related to any claim other than her termination claim, dkt. #170, is GRANTED IN PART; plaintiff's complaint is DISMISSED as to her claims that defendants violated the FMLA by  (1) refusing to allow her to come back to work for two weeks after her doctor released her to work; (2) changing her working conditions after she returned; (3) refusing a request for medical leave in November 2010;

24

however, plaintiff may present evidence of the dismissed claims to the extent it is relevant to prove her termination claim;

b.  defendants' motion to exclude evidence of the claims dismissed on summary judgment, dkt. #171, is DENIED;

c.  defendants' motion to exclude evidence and argument "relating to" plaintiff's barred claims under Title VII and the Americans with Disabilities Act, dkt. #172, is GRANTED IN PART.  Although plaintiff may not argue that defendants violated Title VII or the ADA or present evidence that relates *solely* to a Title VII or ADA claim, plaintiff is not prohibited from presenting evidence in support of her FMLA claim simply because it overlaps with one of those other claims;

d.  defendants' motion to exclude evidence and argument regarding plaintiff's claim against defendant Jay Link, dkt. #173, is DENIED;

e.  defendants' motion to exclude evidence and argument relating to defendant Link's divorce, IRS proceedings, family disputes, litigation history, wealth or other businesses, dkt. #174, is DENIED with respect to statements Link made in previous lawsuits that may be used for impeachment, evidence showing how often defendant Link was working at his other businesses, evidence showing the differences between defendants and Link's other businesses with respect to granting medical leave and evidence showing similarities between plaintiff and Marilyn Lehmann;

f.  defendants' motion to exclude evidence related to Marilyn Lehmann, dkt. #175, is DENIED;

25

g. defendants' motion to bar "golden rule" arguments, dkt. #176, is GRANTED as unopposed;

h. defendants' motion to exclude plaintiff's calendar, dkt. #177, is GRANTED IN PART; plaintiff may read the calendar into the record, but the calendar may not be admitted as an exhibit;

i. defendants' motion to exclude evidence of plaintiff's damages during liability phase of trial, dkt. #178, is GRANTED IN PART; the jury will decide the issue of back pay but the trial will be bifurcated;

j. defendants' motion to exclude evidence of emotional distress, dkt. #179, is GRANTED;

k. defendants' motion to exclude evidence of "any job search efforts for which plaintiff discarded corroborating evidence," dkt. #180, is DENIED.

3. Defendants' motion to use a juror questionnaire, dkt. #182, is DENIED.

4. Defendants' motion for leave to amend their pretrial disclosures, dkt. #214, is DENIED with respect to their request to add Deborah Fringer as a witness. A decision on

the motion as it relates to the damages chart is STAYED until the final pretrial conference.

Entered this 21st day of April, 2014.


BY THE COURT:

/s/

BARBARA B. CRABB
District Judge