IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARYLEE ARRIGO,

Plaintiff,

v.

LINK STOP, INC. and JAY E. LINK,

Defendants.

OPINION and ORDER

12-cv-700-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

A jury found in favor of defendants Link Stop, Inc. and Jay E. Link on plaintiff Marylee Arrigo's claim under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1), that defendants Link Stop, Inc. and Jay E. Link fired her from her job because of medical leave she had taken in the past and possible medical leave she might have needed to take in the future. Dkt. #248. Now plaintiff seeks judgment as a matter of law or a new trial. Dkt. #265. I am denying plaintiff's motion because she has failed to show that no reasonable jury could have rendered a verdict in favor of defendants or that the verdict is unfair or against the clear weight of the evidence. May v. Chrysler Group, LLC, 716 F.3d 963, 971 (7th Cir. 2013) (setting forth standard under Fed. R. Civ. P. 50 for judgment as a matter of law); Whitehead v. Bond, 680 F.3d 919, 927-28 (7th Cir. 2012) (setting forth standard under Fed. R. Civ. P. 59 for new trial).

## BACKGROUND

In 1999, plaintiff began working for defendants, eventually becoming their bookkeeper. In September 2010, plaintiff suffered an anxiety attack and requested medical leave, which defendants approved. Plaintiff wanted to return to work on September 27, 2010, but defendants delayed her return until she could meet with defendant Link on October 8. In November 2010, plaintiff learned that she was pregnant and stopped her anxiety medication because of the pregnancy. She suffered withdrawal symptoms after she stopped taking anxiety medication. Plaintiff says that defendants refused to give her leave at that time. Plaintiff also says that she informed defendant Link that she was pregnant and would need to take maternity leave. In December 2010, defendants gave plaintiff a warning for poor work performance. On January 31, 2011, defendants fired plaintiff after she returned from a short vacation that defendant Link had not approved.

## OPINION

### A. Judgment as a Matter of Law

In her opening brief, plaintiff includes a one-paragraph argument that she is entitled to judgment as a matter of law under Fed. R. Civ. P. 50 because no reasonable jury could have found that her medical leave did not play some role in defendant Link's decision to fire her. Although defendants assert multiple reasons in their opposition brief for rejecting this argument, plaintiff ignores this issue in her reply brief, suggesting that she has abandoned it. In any event, I agree with defendants that plaintiff forfeited her right to seek judgment

as a matter of law by failing to raise it before the case was sent to the jury. Fed. R. Civ. P. 50(b); Wallace v. McGlothan, 606 F.3d 410, 418-19 (7th Cir. 2010).

B. New Trial

1. Dismissal of non-termination claims

In a footnote, plaintiff says that the court "improperly dismissed Plaintiff's non-termination FMLA interference claims in her order on motions in limine." Plt.'s Br., dkt. #17, at 39 n.17. In that order, dkt. #219, I noted that plaintiff was not seeking equitable relief and that the FMLA limited her damages to "actual monetary losses," such as lost wages. 29 U.S.C. § 2617(a)(1)(A). Further, plaintiff had not identified any monetary losses she sustained with respect to three of her claims: (1) defendants refused to allow her to come back to work for two weeks after her doctor released her to work; (2) defendants changed her working conditions after she returned; (3) defendants refused a request for medical leave in November 2010. As a result, I dismissed these claims, relying on Franzen v. Ellis Corp., 543 F.3d 420, 430 (7th Cir. 2008), in which the court of appeals affirmed the district court's decision to enter judgment in favor of the defendant on an FMLA claim after the plaintiff was unable to prove damages under § 2617.

In her motion, plaintiff does not challenge the reasoning of the order and she does not discuss Franzen. Instead, she cites Harrell v. United States Postal Service, 445 F.3d 913, 928-29 (7th Cir. 2006), for the proposition that "an FMLA interference claim is viable as long as the employee was 'prejudiced' by the interfering action and that defendant is liable

for monetary losses suffered 'by reason of the violation.'" Plt.'s Br., dkt. #266, at 39 n.17. However, Harrell does not contradict the holding in Franzen that a plaintiff cannot sustain an FMLA claim if she cannot tie the claim to particular relief authorized by the statute. The only monetary losses plaintiff identified were related to her termination claim, so the other claims could not survive, but I stated that plaintiff was free to present evidence of the dismissed claims to the extent it was relevant to prove her termination claim.

Plaintiff also cites Arnold v. AECOM Government Services Employee Benefits Plan & Trust Expatriate, 2013 WL 6579391 (W.D. La. Dec. 13, 2013), for the proposition that "a motion in limine is an improper vehicle to request dismissal of a claim." Although I agree with plaintiff that it would have been preferable for defendants to raise the issue in their motion for summary judgment rather than in their motions in limine, plaintiff has not argued that defendants forfeited the point by failing to raise it sooner. In the absence of a forfeiture, I saw no reason to allow claims to go forward when it was inevitable that they would have to be dismissed at the close of trial. Plaintiff cites no controlling authority that requires a court to try a claim under those circumstances.

2. Verdict form

Plaintiff challenges the special verdict form on the ground that it required her to prove defendants' discriminatory intent. In an order dated April 23, 2014, dkt. #221, I explained the reasoning for choosing the standard in the special verdict form. Plaintiff does not discuss the April 23 order in her motion, let alone challenge any of the reasoning in it,

so I decline to discuss the issue further.

3. Jury instructions

Plaintiff says I erred by failing to give an instruction on pretext and by failing to include various instructions she proposed about provisions in the FMLA. Plaintiff did not propose an instruction on pretext, which makes it difficult for her to argue that its omission unfairly prejudiced her. Further, she cites no authority for the proposition that a court must give a pretext instruction in a retaliation case. In fact, there is no pretext instruction in the pattern instructions on civil rights cases in the Court of Appeals for the Seventh Circuit. Plaintiff was free to argue to the jury that it could rely on any of the evidence admitted at trial to find that defendants retaliated against plaintiff, including any evidence of pretext, so I see no unfair prejudice to plaintiff.

With respect to the FMLA provisions, plaintiff says the jury should have received instructions on "specific FMLA rights, the notice required, an employee's right to reinstatement an equivalent position or when and how a certification can be requested." Plt.'s Br., dkt. #266, at 49. Plaintiff says that the additional instructions would have given the jurors "the legal context necessary for them to determine if the law has been broken." Id. The problem is that plaintiff does not explain how including more instructions about different provisions in the FMLA would have helped the jury answer the questions on the special verdict form, which required them to determine whether plaintiff's past or future medical leave motivated defendants to fire her. Because the provisions plaintiff cites had no

bearing on the reason or reasons she was terminated, I declined to include them.

4. Evidentiary rulings

An erroneous evidentiary ruling requires a new trial if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Young v. James Green Management, Inc., 327 F.3d 616, 623 (7th Cir. 2003) (quoting Williams v. Pharmacia, Inc., 137 F.3d 944, 951 (7th Cir. 1998)). In deciding whether plaintiff has met that standard, I have not considered arguments in the parties' briefs unless they have identified particular pieces of evidence that were excluded accompanied by a citation to a relevant portion of the record. Gross v. Town of Cicero, Illinois, 619 F.3d 697, 704-05 (7th Cir. 2010) ("If the [plaintiff's] evidence . . . was so substantial, [he] should have had no trouble pointing it out with some specificity. We will not hunt through the record to find this 'wealth' of evidence."); Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1001 (7th Cir. 2004) ("[W]e will not root through the hundreds of documents and thousands of pages that make up the record here to make [plaintiff's] case for him.").

a. October 8 meeting

In September 2010, plaintiff took medical leave from work after she suffered a severe panic attack. On October 8, 2010, she met with defendant Link to discuss her return to work. Plaintiff argues that the court erred in excluding Plaintiff's Exhibit 13, Link's handwritten notes about the meeting, which plaintiff says would show that Link "delayed

her reinstatement in order to evaluate [her] fitness to return to work himself." Plt.'s Br., dkt. #266, at 16.

If plaintiff had been proceeding on a claim that defendants had terminated her or otherwise mistreated her because of a perception that she was mentally ill, I would have agreed with plaintiff that any concerns Link expressed about plaintiff's "fitness" would be relevant evidence. However, despite devoting many pages of her opening brief and reply brief to the issue of the notes, plaintiff never explains how they were relevant to show that defendants fired her for taking leave, which was the only issue tried.

In her opening brief, plaintiff points out that Link wrote "leave of absence medical review" at the top of his notes. That title shows only what is already obvious, that plaintiff had been on leave and Link was reviewing plaintiff's medical condition. It does not show that Link was upset with plaintiff for taking leave. After all, it is undisputed that Link was concerned that plaintiff was returning to work *too soon*, not that she took off too much time. Although it may have been inappropriate for Link to conduct his own medical assessment of plaintiff, that shows that the evidence would have been prejudicial to defendants; it does not show any relevance to the issue that was tried.

In her reply brief, plaintiff includes a long list of reasons for her belief that the notes should have been admitted. For example, plaintiff says that the notes are evidence that Link was displeased with her and began treating her differently, but even if that is true, it matters only to the extent that there is some indication that Link was displeased with plaintiff for taking leave rather than because he believed her mental health condition rendered her unfit

to work. Plaintiff says that the notes show that Link was "second-guessing" her reason for taking leave and that he was concerned about her need to take leave in the future, but these arguments are speculative. Plaintiff does not point to any evidence that supports the drawing of an inference that Link was expressing any kind of animosity towards plaintiff's leave.

b. Defendant Link's knowledge

I excluded evidence from both sides related to plaintiff's job performance on the ground that the party did not adduce sufficient evidence that defendant Link, the only decision maker in the case, was aware of that aspect of plaintiff's performance. Because the only question being tried was whether defendant Link fired plaintiff because of the exercise of her right to take medical leave rather than because of her alleged poor performance, I concluded that any evidence of plaintiff's job performance—good or bad—was not relevant unless there was some evidence that Link could have considered it in making his decision. Gates v. Caterpillar, Inc., 513 F.3d 680, 689 (7th Cir. 2008) ("The proper inquiry mandates looking at [the plaintiff's] job performance *through the eyes of her supervisors* at the time of her suspension and termination.") (emphasis added).

In other words, in a discrimination or retaliation case in which the employer says that it fired an employee for poor performance, the key question is not whether the employer was wrong in its assessment of the employee's performance, but whether it is *lying* about its assessment of the employee's performance. See also Silverman v. Board of Education of City

of Chicago, 637 F.3d 729, 738 (7th Cir. 2011) ("To defeat the [employer's] motion [for summary judgment], [the plaintiff] must point to evidence suggesting that the [employer] itself did not give an honest explanation of its reason."); Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417-18 (7th Cir. 2006) ("[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason."); Hague v. Thompson Distribution Co., 436 F.3d 816, 824 (7th Cir. 2006) ("[The plaintiff] must establish that [the employer] lied about its reasons for firing him—not that [the employer] was wrong for firing him for the reasons it gave."). Evidence that contradicts the employer's assessment of the plaintiff's performance but of which the decision maker was not aware cannot show that the employer is lying about its reasons for a decision. (There is an exception to this rule when a non-decision maker with discriminatory intent influences the decision maker, Jajeh v. County of Cook, 678 F.3d 560, 572 (7th Cir. 2012), but plaintiff did not argue that theory in this case, so I do not consider it.)

Plaintiff challenges many of the rulings that resulted in the exclusion of evidence that she offered regarding her job performance. However, some of her challenges do not represent what actually happened at trial. For example, plaintiff says that "Link claimed that he fired Plaintiff for her 'attitude' and treatment of coworkers, but testimony from Karla Gustafson, a manager who observed Plaintiff on a daily basis as a manager, was stricken on the Court's own motion." Plt.'s Br., dkt. #266, at 23. However, the portion of the

transcript plaintiff cites shows that I allowed the jury to consider Gustafson's *observations* about plaintiff's work, but I excluded evidence about Gustafson's *opinions* of plaintiff's performance because Gustafson had not communicated those opinions to Link. Tr. Trans., vol. 2, dkt. #255, at 116. Plaintiff does not identify any reason why Gustafson's personal opinions of plaintiff's performance would be relevant to determining why Link fired plaintiff.

As a second example, plaintiff says that one of her co-workers was precluded from testifying about "when she and Plaintiff would arrive at Link's companies in the morning" to rebut Link's testimony that they were "erratic." However, the co-worker, Krista Schaff, was permitted to testify that she and plaintiff arrived at work at 10:30 a.m. Tr. Trans, day 4, dkt. #257, at 75.

Other challenges are irrelevant for reasons other than defendant Link's lack of knowledge. For example, plaintiff says that one of her co-workers was not allowed to rebut Link's testimony that plaintiff was "defiant" by testifying that plaintiff did not raise her voice at the employee. Plt.'s Br., dkt. #266, at 23-24. However, plaintiff does not explain how testimony that she did not yell at a particular employee would undermine Link's testimony that plaintiff was defiant toward *him*.

As a second example, plaintiff says that the court should have admitted a "message log" between plaintiff and defendant Link's assistant, Lydia Cook, "to show that Cook did not sincerely believe the complaints [that she said she made to Link about plaintiff], and likely did not make them at all." Plt.'s Br., dkt. #266, at 30. Whether Cook believed the complaints is not relevant because she was not a decision maker. Whether she actually made

the complaints would be relevant to showing pretext (because Link could not consider the complaints if they were never made), but plaintiff points to nothing in the messages that refutes Cook's testimony that she made the complaints she says she did. Plaintiff says that the messages show that Cook was "friendly" with plaintiff and was "joking around with her," Plt.'s Br., dkt. #266, at 30, but plaintiff does not suggest that Cook was making observations about plaintiff's job performance in the messages. Because there is nothing inconsistent between being "friendly" with someone and having concerns about their performance (and passing on those concerns), the exhibit would not have been helpful in impeaching Cook's testimony.

A third example is testimony plaintiff wanted to elicit from co-worker Krista Schaaf about plaintiff's relationship with another co-worker, Kelle Boese. Plaintiff wanted to use that testimony to impeach Boese's testimony that she complained about plaintiff to Cook, who said that she had notified Link about Boese's complaints. Plaintiff says that Shaaf's testimony would have been relevant to show that Boese "did not in fact make the complaints," Plt.'s Br., dkt. #266, at 31, but even if that is true, Schaaf's testimony would not have undermined *Cook's* testimony that she had informed Link about complaints by Boese.

With respect to her remaining challenges on this issue, plaintiff conflates two arguments: (1) she did not need to show any connection between her performance and Link's knowledge; and (2) she submitted sufficient evidence to allow the jury to infer that Link knew about the evidence she wanted to submit. Plaintiff's first argument is

inconsistent with the case law cited above. The two published cases plaintiff cites stand for the unremarkable proposition that evidence of an employee's superior job performance may be relevant if that evidence "show[s] that the company's stated reasons for firing [the employee] were pretextual." Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 19 (7th Cir. 1987). See also Brown v. M & M/Mars, 883 F.2d 505, 509 (7th Cir. 1989) (jury could consider testimony of co-workers and managers that contradicted observations of decision maker). In none of the cited cases did the court state that a party could put in evidence of an employee's performance if the relevant decision makers were not aware of that aspect of the employee's performance.

With respect to plaintiff's alternative arguments that the jury could have inferred that Link knew about the excluded evidence, I conclude that the evidence plaintiff cites to support the drawing of the inference is simply too speculative. For example, plaintiff wanted to put in evidence that she had spoken with Cook about whether she should take vacation days despite defendant Link's failure to give her a definitive answer and that Cook had stated, "If I were you, I would just go." (Plaintiff decided to take the vacation days and defendant Link fired her when she returned.) I did not allow plaintiff to offer the testimony about her conversation with Cook in front of the jury because it was not relevant. The only potential relevance of the evidence was to show that plaintiff had not decided unilaterally that she could take vacation but instead had relied on the assurances of Link's assistant. However, the problem with that theory was that plaintiff had not adduced any evidence that anyone had informed Link of Cook's and plaintiff's alleged conversation before he fired her.

If Link did not know about the conversation, it could not have influenced his decision whether to terminate plaintiff.

Now plaintiff says that a jury could infer reasonably that Cook had relayed the conversation to Link because Cook was Link's "eyes and ears." Distilled, plaintiff's argument is that a jury could infer that Cook would tell Link everything that she said or observed because she was his assistant. However, without some additional evidence that Cook informed Link of a particular conversation, a reasonable jury could not infer that she did solely from the existence Cook's and Link's business relationship. Further, even if Cook had informed Link of the conversation, it seems unlikely that it would have made any difference in the case. After all, Link's alleged concern was that plaintiff took vacation without *his* permission. Plaintiff has not adduced any evidence that Link had delegated to Cook the authority to make decisions regarding requests for time off or that plaintiff had sought permission from Cook in the past.

Finally, plaintiff argues that Cook was permitted to testify about her observations of plaintiff in some instances even if she did not testify that she informed Link of her observations. Plt.'s Br., dkt. #266, at 25 n.14. However, plaintiff does not deny defendants' contention that she did not object to any of the testimony she cites and she does not cite any authority for the proposition that her failure to object meant that her excluded evidence "became admissible" at that point. Plt.'s Br., dkt. #266, at 25. In her reply brief, plaintiff includes arguments about more defense witnesses who testified about plaintiff's performance without tying their testimony to Link's knowledge, but I have not considered

those arguments because plaintiff did not include them in her opening brief. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009).

c. Cook's alleged bias

Plaintiff objects to the decision to exclude testimony that Cook received a $70,000 salary from defendants because she says it would have shown bias. However, the jury already knew that Cook was defendants' paid employee. I do not see how disclosing the precise amount of her salary would have added anything to plaintiff's case.

d. Impeachment of defendant Link

Plaintiff identifies two instances in which she says she was prevented from impeaching defendant Link's testimony, Plt.'s Br., dkt. #266, at 32, but she does not explain in her brief how the evidence she cites would have impeached Link's testimony on any relevant issue. In defendants' opposition brief, they identify several reasons for excluding this evidence, Dfts.' Br., dkt. #273, at 40-41, but plaintiff does not discuss the issue in her reply brief, so I conclude that she has abandoned it.

e. Defendants' treatment of Marilyn Lehman

Marilyn Lehman worked for defendants before plaintiff did and she returned after plaintiff was fired, in a position similar to plaintiff's. I admitted some testimony that Lehman received more favorable treatment from defendants despite engaging in conduct

similar to plaintiff's, Tr. Trans., day 3, dkt. #256, at 273-83, but plaintiff argues that I excluded evidence of Lehman's "insubordination," which was one of the reasons defendant Link gave for firing plaintiff. In particular, plaintiff says that "Marilyn Lehman had yelled 'Fuck you' to Link, hung up on him during a business call, and quit her job with Link's companies." Plt.'s Br., dkt. #266, at 33. Plaintiff does not explain how quitting a job could be classified as "insubordination," so I do not consider that issue. The portions of the transcript plaintiff cites say nothing about Lehman hanging up on Link, so I do not consider that issue either.

With respect to Lehman yelling at Link, counsel stated during his offer of proof on this issue that Lehman "uttered the same expletive in the same way to Mr. Link that Ms. Arrigo did on the final day of her employment; that this was not deemed to be insubordination sufficient to justify her termination." Tr. Trans., day 4, dkt. #257, at 19. However, the interaction between plaintiff and defendant Link cited by counsel occurred *after* defendant Link informed plaintiff that she was fired, so it could not have influenced Link's decision. Thus, testimony that Link did not fire Lehman for using similar language is not probative of Link's intent toward plaintiff.

e. Alleged retaliation against Kelly Cashman

One way plaintiff wanted to prove her claim was through evidence of defendant Link's reactions toward other employees' requests for leave. Toward that end, one of plaintiff's exhibits was an email from Link to Kelly Cashman after Cashman informed Link

that he needed to extend his paternity leave:

> Okay, if it changes further I will need to make alternate plans, as you have been away for over a week in our busy season. I have been at the stores everyday and we have several issues that need to be taken care of. Keep me updated, I was expecting you back to work today.

Plt.'s Exh. #72. I admitted the exhibit, but plaintiff says that I erred by excluding testimony from Cashman regarding why he "construed Link's response as retaliatory." Plt.'s Br., dkt. #266, at 35. However, the email spoke for itself. Cashman's opinion that he believed it was a threat was not admissible without some foundation for that opinion. Yancick v. Hanna Steel Corp., 653 F.3d 532, 547-48, 653 F.3d 532 (7th Cir. 2011). Because plaintiff does not identify any foundation beyond the text of the email for any perception that Link was threatening him, she has not shown that I erred by excluding that testimony, particularly because plaintiff does not cite any evidence that Link ever carried out the perceived threat.

f. Evidence related to plaintiff's disability and pregnancy discrimination claims

Just before the deadline for filing dispositive motions, plaintiff tried to amend her complaint in this case to add claims for pregnancy and disability discrimination under Title VII of the Civil Rights and the Americans with Disabilities Act, but I denied that motion as untimely and unfairly prejudicial. Dkt. #79. In the order on motions in limine, I stated that "plaintiff may not argue that defendants violated the ADA or Title VII or refer to the dismissed claims, but to the extent evidence 'relating to' the ADA and Title VII claims overlaps with evidence relating to plaintiff's FMLA claim, plaintiff remains free to present that evidence." Dkt. #219 at 11.

In her motion for a new trial, plaintiff argues that I erred in excluding evidence related to her ADA and Title VII claims, but she fails to explain how most of that evidence was relevant to proving her FMLA claim. The only specific example she discusses is testimony about a conversation that she had with co-workers related to her pregnancy. Plaintiff wanted to use the conversation to rebut defendant Link's testimony that he was not aware of her pregnancy (and thus not aware of her need for maternity leave) until after he fired her. Although defendant Link was in the room during the conversation, the parties debated at some length whether he was close enough to hear it. Tr. Trans., day 2, dkt. #255, at 285-293. Plaintiff says that I excluded the testimony, but that is incorrect. I did not rule on the issue because defense counsel offered to discuss a possible stipulation with plaintiff's counsel. Id. at 293. After the parties presented a stipulation to the court the following morning, Tr. Trans., day 3, at 4, the matter became moot. See also Tr. Trans., day 5, at 38 ("[T]he parties have stipulated for the purpose of the jury's decision that Mr. Link knew that Ms. Arrigo was pregnant before she was terminated."). Plaintiff does not argue that she tried to raise the issue again.

g. Notice of evidentiary objections

Plaintiff argues that she was unfairly prejudiced because many of the evidentiary objections defendants raised were raised at trial rather than in motions in limine, so plaintiff's counsel had to revise their witness outlines "on the fly." Plt.'s Br., dkt. #266, at 40. However, plaintiff cites no authority for the proposition that a party waives its right to

object to inadmissible evidence by failing to file a motion in limine. Obviously, parties raise objections throughout nearly every trial. Although it may be preferable to address significant evidentiary issues before trial, I am not aware of a requirement to do so. The ultimate question is not how far in advance the opposing party raised the objection, but whether the evidence in dispute is admissible under the Federal Rules of Evidence. Because I have concluded that the evidence in dispute was not admissible, I conclude that plaintiff is not entitled to a new trial as a result of the exclusion of evidence.

5. Closing arguments

Plaintiff raises two objections to comments defense counsel made during closing arguments. First, she objects to comments that she took vacation days in January 2011 without getting approval from defendant Link because she "didn't care what Jay [Link] said . . . The expectations or concerns of the owner of these businesses were not her concerns." Tr. Trans., day 5, dkt. #258-59, at 78-79. Second, she objects to a comment that "[t]here was no testimony from Mr. Cashman that he suffered any retaliation whatsoever for taking his leave." Id. at 72

A threshold problem with both of these objections is that plaintiff did not raise them during trial. Although plaintiff states in a footnote in her reply brief that permitting the comments was plain error, Plt.'s Rep. Br., dkt. #274, at 17 n.10, she does not develop an argument to support that position.

In any event, plaintiff has not shown that defense counsel's comments require a new

trial. Jones v. Lincoln Electric Co., 188 F.3d 709, 731 (7th Cir. 1999) ("A new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party."). Plaintiff objects to counsel's statement that she "didn't care" what defendant Link wanted her to do on the ground that it is misleading in light of her failed attempt to introduce evidence that she decided to take the vacation days only after Link's assistant told her that she should. However, even if plaintiff had been permitted to present her testimony on that issue before the jury, defendants still would have been able to make the argument that plaintiff "didn't care" about Link because she obtained permission from Link's assistant rather than Link himself. Although defense counsel could have used more restraint in choosing his words, any error he made is not so obvious or prejudicial that it requires a new trial.

Plaintiff objects to defense counsel's comments about Cashman because plaintiff had tried to introduce testimony from Cashman about his perception of retaliation, but the court would not allow it. Again, even if the proposed testimony had been admitted, it would not change the fact that Cashman had not offered any evidence of retaliation. Cashman's proposed testimony was not that Link had taken any steps to retaliate against him for taking leave, but that he believed Link's email was a threat of retaliation. As discussed above, Cashman's lay opinion about the intent behind the email is not evidence that retaliation actually occurred. Accordingly, I see no error in that aspect of defense counsel's closing argument.

ORDER

IT IS ORDERED that plaintiff Marylee Arrigo's motion for judgment as a matter of law or, in the alternative, a new trial, dkt. #265, is DENIED.

Entered this 29th day of September, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge